UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | |
|---|---|
| NASH-FINCH COMPANY ) <br> And SUPER FOOD SERVICES, INC., ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> CASEY'S FOODS, INC., et. al., ) <br> ) <br> Defendants. ) | Civil No. 6:15-cv-00086-GFVT <br><br> **MEMORANDUM OPINION** <br> **&** <br> **ORDER** |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Plaintiffs Nash-Finch Company and its wholly owned subsidiary Super Food Services, Inc., have asked the Court to reconsider Magistrate Judge Hanly Ingram's recent ruling on the Plaintiffs' motion for a protective order. Plaintiffs sought to designate certain information to be produced in the case as "attorneys' eyes only" or "AEO," but Judge Ingram denied the request. This Court, unable to determine Judge Ingram's decision was clearly erroneous or contrary to law, will **OVERRULE** the Plaintiffs' objections.

**I**

**A**

Plaintiffs Nash-Finch Company and Super Food Services, Inc., are engaged in the wholesale grocery distribution business, supplying groceries to independent grocery stores in forty-six states including Kentucky. Plaintiffs bring this suit against their former customers the Cox Defendants, as well as one of their competitors Laurel Grocery Company, LLC. At one point in time, the Cox Defendants were the Plaintiffs' largest customer in Kentucky. A Retail Sales and Services Agreement ("RSSA") entered into by the parties on February 27, 2008,

established a ten year supply contract between the Plaintiffs and the Cox Defendants.  However, the Cox Defendants terminated the agreement in February 2015 and began doing business with Laurel, one of the Plaintiffs' competitors.  Gary Crawford, Plaintiffs' former Vice President of Sales, left Plaintiffs' employ and began working at Laurel shortly before the Cox Defendants terminated their supply contract with the Plaintiffs and transferred their loyalty to Laurel.  Plaintiffs believe Mr. Crawford improperly used confidential information learned while he was Vice President of Sales to "lure away" the Cox Defendants to Laurel.  [R. 58 at 4.]  Accordingly, Plaintiffs filed suit against the Cox Defendants for breach of the RSSA and against Laurel for tortious interference.  The Cox Defendants have counterclaimed on various grounds, alleging a prior breach of the RSSA on behalf of Plaintiffs, unjust enrichment, and other claims including fraud, negligence, and estoppel.

On December 18, 2015, Plaintiffs filed a motion for a protective order.  [R. 44.]  While the parties had previously agreed to a protective order with certain confidentiality restrictions [*see* R. 39], the Plaintiffs desired an additional protective order to include "attorneys' eyes only" or "AEO" protection for "a narrow category of confidential information that includes minimum purchasing requirements, pricing, credit, loans, rebates, discounts, and other incentives that Plaintiffs offered to the Cox Defendants."  [R. 44-1 at 2.]  After the matter was fully briefed, Magistrate Judge Hanly A. Ingram denied the Plaintiffs' motion and determined the Defendants' need for full access to the information outweighed the potential harm to the Plaintiffs.  Nash-Finch and Super Food Services object to the Magistrate Judge's ruling on several grounds, which this Court considers below.

**B**

Magistrate judges have broad discretion over discovery and other non-dispositive matters. While the Court can reconsider the magistrate's orders, the Court's standard of review is deferential. 28 U.S.C. § 636(b)(1)(A) allows a district court to "designate a magistrate to hear *and determine* any pretrial matter pending before the court" (emphasis added). "When a magistrate judge determines a non-excepted, pending pretrial matter, the district court has the authority to "reconsider" the determination, but under a limited standard of review." *Massey v. City of Ferndale*, 7 F.3d 506, 509 (6th Cir. 1993) (citing 28 U.S.C. § 636(b)(1)(A)).

Pursuant to Federal Rule of Civil Procedure 72(a), the Court will set aside or modify a magistrate judge's order only if the Court finds that at least a portion of the order is "clearly erroneous or contrary to law." Fed. R. Civ. Pro. 72(a). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948). "The question is not whether the finding is the best or only conclusion that can be drawn from the evidence, or whether it is the one which the reviewing court would draw." *Heights Community Congress v. Hilltop Realty, Inc.*, 774 F.2d 135, 140 (6th Cir. 1985). Instead, the Court considers whether there is evidence in the record to support the initial court's finding and whether "its construction of that evidence is a reasonable one." *Id.*

**II**

Upon review of the record and careful consideration of the Plaintiffs' objections, the Court does not find grounds to set aside the Magistrate Judge's order. The Court is sympathetic to the Plaintiffs' concern about the need to prevent competitors from obtaining private business

information; however, Judge Ingram did not err in determining the Defendants' need for full access to the information outweighed the Plaintiffs' risk of harm.

To conduct his analysis, Judge Ingram considered the factors outlined in *Stout v. Remetronix, Inc.*, 298 F.R.D. 531 (S.D. Ohio 2014), a case heavily relied upon by the Plaintiffs in their motion for AEO protection. In *Stout*, the court identified six factors often examined when evaluating the need to protect sensitive business information or trade secrets from disclosure:

> (1) the extent to which the information is known outside of his business; (2) the extent to which it is known by employees and others involved in his business; (3) the extent of measures taken by him to guard the secrecy of the information; (4) the value of the information to him and to his competitors; (5) the amount of effort or money expended by him in developing the information; (6) the ease or difficulty with which the information could be properly acquired or duplicated by others.

*Stout*, 298 F.R.D. at 535. The *Stout* court noted that, as a final consideration, courts should "balance the needs of the party seeking the information against the potential for harm resulting from disclosure." *Id.* In this case, Judge Ingram looked to the affidavit of Jim Gohsman, a Vice President of Sales employed by Nash-Finch's parent entity. [*See* R. 44-2.] Based on the Gohsman affidavit, which was not disputed by the Defendants, Judge Ingram concluded the six *Stout* factors largely weighed in favor of the Plaintiffs' motion. However, Judge Ingram went on to indicate that, based upon the final balancing the Court must undertake, the needs of the Defendants seeking information like the RSSA outweighed the potential for harm to the Plaintiffs.

The Plaintiffs object to the Magistrate's order on several grounds, arguing the Magistrate erred in how he considered the *Stout* factors and balanced their risk of harm with the Defendants' need for the sensitive information. To begin, they take issue with Judge Ingram's

4

mischaracterization of Gary Crawford's position.  Judge Ingram erroneously stated Gary Crawford was a former sales representative of Cox Foods Group [R. 56 at 2] when, in fact, Crawford was a former employee of the Plaintiffs who is now employed by their direct competitor Laurel.  [*See* R. 58 at 6.]  The *Stout* court clearly took into account the fact that several former employees in that case were employed by direct competitors, and no such explicit recognition exists in the Magistrate's order here.  *Stout*, 298 F.R.D. at 535.

Although the Court agrees that Judge Ingram misstated Crawford's former employment [*compare* R. 56 at 2, identifying Crawford as "a former sales representative of Cox Food Groups," *with* R. 1 at 5, identifying Crawford as "Plaintiffs' sales representative assigned to the Cox Foods Group"], the Court does not believe this misidentification substantially affected Judge Ingram's ultimate determination.  Judge Ingram clearly understood that Crawford, in some capacity, was privy to certain confidential information of the Plaintiffs, and that the Plaintiffs now accuse Crawford of conveying that information to Laurel, thereby helping Laurel obtain a supply contract with the Cox Defendants.  [*See id.* at 2-4.]  Although Crawford's exact role in the situation was misstated, the Magistrate's order in its entirety suggests the mistake did not drastically alter Judge Ingram's understanding of the case.

Similarly, the Plaintiffs argue Judge Ingram wrongly compared their case to *Global Material Techs., Inc. v. Dazheng Metal Fibre Co.*, 2015 WL 5611667 (N.D. Ill. Sept. 23, 2015). However, Judge Ingram's discussion of that decision—even if the decision was not entirely analogous—does not require the Court to set aside his order for clear error.  While the facts of *Global Material* and the present matter may not completely align, the Magistrate's use of *Global Material* to emphasize courts' selective imposition of the AEO designation was still reasonable.

5

To the extent the Plaintiffs contend Judge Ingram's ruling focuses solely on the Defendants' burden rather than truly balancing that burden with the Plaintiffs' risk of harm, the Court finds the Plaintiffs' objection ill-founded in light of the Magistrate's order on the whole. Judge Ingram's order does exhibit an understanding of the risk of harm faced by the Plaintiffs. For example, Judge Ingram accepted Jim Gohsman's affidavit to be true and thereby acknowledged Gohsman's statement that the unauthorized disclosure of the Plaintiffs' confidential information could lead to various forms of unfair commercial advantage and competition. [*See* R. 56 at 3.] Even so, Judge Ingram ultimately concluded Laurel's need for full access of the RSSA outweighed the harm that could occur to the Plaintiffs. This conclusion does not warrant reversal, particularly where the Court considers the Magistrate's order on a deferential standard of review. As stated above, "[t]he question is not whether the finding is the best or only conclusion that can be drawn from the evidence, or whether it is the one which the reviewing court would draw." *Heights Community Congress,* 774 F.2d at 140. Instead, the Court considers whether there is evidence in the record to support the initial court's finding and whether "its construction of that evidence is a reasonable one." *Id.* The Magistrate Judge could reasonably conclude the Defendants' need for the information outweighed the difficulties inherent in litigation where AEO designations are in place with the risk of harm to the Plaintiffs if their confidential information is misappropriated.

Moreover, the Plaintiffs' remaining arguments about the Magistrate's possible misunderstanding of the proposed protective order itself do not convince the Court the Magistrate's order was clearly erroneous or contrary to law. Nash-Finch and Super Food Services allege Judge Ingram did not consider or misconstrued the proposed protective order, failing to account for the fact that AEO could be invoked to keep information from both parties

or only one party as needed. Plaintiffs indicate they likely seek AEO only as to Laurel, their direct competitor. [R. 58 at 12.] However, Judge Ingram specifically determined that Laurel needed full access to the RSSA in order to fully defend itself. [R. 56.]

Plaintiffs additionally contend Judge Ingram's ruling "mistakenly conflates the specific AEO dispute between Plaintiffs and Laurel Grocery as to the RSSA" with the proposed protective order on the whole, which would allow any party to apply for AEO for its secret information. [R. 58 at 12.] Relatedly, they object to the order on the basis that Judge Ingram considered only the RSSA and no other documents to which AEO protection could later be warranted. It is true that the Magistrate's order focuses essentially entirely on the RSSA. The Plaintiffs' motion for a protective order, however, also largely focused on the RSSA. There is no real indication that, after considering the fully briefed matter, Judge Ingram misunderstood the potential applicability of an AEO designation to information beyond the RSSA and so chose to deny the Plaintiffs' motion where he otherwise would have granted it.

Finally, the Plaintiffs allege Judge Ingram should have modified their proposed protective order rather than denying the entire order altogether. More specifically, the Plaintiffs argue that if Judge Ingram took issue with the applicability of AEO to the Cox Defendants, he should have modified the order to correct any overbreadth or inapplicability. [R. 58 at 13.] The parties, not the Court, are tasked with properly litigating the case. The Court cannot find that Judge Ingram's failure to modify the protective order and thereby "remedy any issue as to the Cox Defendants" was clearly erroneous as the Plaintiffs contend. [*See id.*]

On the whole, the Court does not have "the definite and firm conviction that a mistake has been committed." *See U.S. Gypsum Co.*, 333 U.S. at 395. The Plaintiffs have a strong argument as to why a protective order providing for AEO designation would be appropriate here;

however, Judge Ingram ultimately found that the balance weighed in favor of full disclosure to the Defendants. His emphasis on Laurel's need to fully investigate and discuss the terms of the allegedly misused confidential information is reasonable, and his conclusion need not even be the best or most appropriate one in order to survive the Plaintiffs' objections. *See Heights Community Congress*, 774 F.2d at 140. While the case may involve a close call, it does not involve clear error on the part of the Magistrate Judge. Under the Court's limited review, the order will stand.

### III

Accordingly, and the Court being otherwise sufficiently advised, it is hereby **ORDERED** that the Plaintiffs' Objections [R. 58] are **OVERRULED**, and the parties are directed to comply with Magistrate Judge Ingram's decision at Docket Entry 56.

This the 23rd day of February, 2016.

Gregory F. Van Tatenhove
United States District Judge