UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| NASH-FINCH COMPANY and SUPER FOOD SERVICES, INC., | ) ) ) | |
| Plaintiffs, | ) ) | Civil No. 6:15-cv-00086-GFVT |
| v. | ) ) ) | **REDACTED MEMORANDUM OPINION & ORDER** |
| CASEY'S FOODS, INC., et al., | ) ) | |
| Defendants. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Plaintiffs Nash-Finch Company and Super Food Services, Inc., are wholesale grocery distributors. Dedicated to keeping the local grocery store alive, Plaintiffs distribute food products and other supplies to independent grocery stores throughout Eastern Kentucky. For a time, Plaintiffs supplied Casey's Foods, Inc., and various other entities referred to as "the Cox Defendants." This relationship began in 2008, when Plaintiffs and the Cox Defendants entered into a Retail Sales and Services Agreement. ████████████████████

████████████████████████████████████████

███████████

In February 2015, the relationship went south. The Cox Defendants broke their contract with Nash-Finch and Super Food and switched their allegiances to a competing grocery distributor, despite the liquidated damages clause written into the Retail Sales and Services Agreement. At issue now is whether the Cox Defendants are liable for those liquidated damages, or whether their termination of the contract is excused due to an alleged prior breach by the Plaintiffs. After thoroughly reviewing the Retail Sales and Services Agreement, as well as the

rest of the record and relevant case law, the Court wholly GRANTS Plaintiffs' motion for summary judgment.[1]

**I**

Plaintiffs Nash-Finch Company and Super Food Services, Inc., are engaged in the wholesale grocery distribution business, supplying products to independent grocery stores in forty-six states including Kentucky.  Pursuant to a Retail Sales and Services Agreement ("RSSA") entered into on February 27, 2008, Plaintiffs contracted to supply a group of regional groceries referred to as "the Cox Defendants."[2] ██████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████   [R. 100-3 at ¶ 11.]  Although the RSSA remained in force until February 2018, the Cox Defendants terminated the agreement in February 2015 and began doing business with Laurel Grocery Company, LLC, one of Plaintiffs' competitors.[3]  Plaintiffs now bring this suit for breach of contract against their former customers.

---

[1] The Court files the instant opinion under seal and will subsequently file a redacted version of the opinion in the public record.  The Sixth Circuit has emphasized the public's interest in access to judicial decisions and "also on the conduct giving rise to the case."  *See Shane Group, Inc. v. Blue Cross Blue Shield of Mich.*, 825 F.3d 299 (6th Cir. 2016); *Rudd Equipment Co. v. John Deere Constr. & Forestry Co.*, 834 F.3d 589 (6th Cir. 2016).  However, documents may still be sealed for compelling reasons if the seal is narrowly tailored to those reasons.  *See id.*  Both parties have expressed concerns regarding the significant proprietary information at issue in this dispute, and the Court, after taking a careful and independent look at the documents, agrees that sealing the summary judgment briefing and exhibits is appropriate.  Accordingly, the Court will grant the three pending motions to seal [R. 98; R. 103; R. 106] and will redact this opinion before placing it in the open record.

[2] The remaining Defendants in this case are Casey's Foods, Inc., KCR LTD, Inc., C&S Foods, Inc., Manchester, Inc., CDM Foods, Inc., and J&L Cox, LLC, and Jimmy R. Cox and Lisa C. Cox.  The parties are collectively referred to herein as the "Cox Defendants," because Martin Cox is the president of most of the entities.  Martin Cox signed the RSSA on behalf of several of the defendant entities and served as the 30(b)(6) designee for all of the entities.  The individual defendants Jimmy R. Cox and Lisa C. Cox also guaranteed the entities' obligations under the RSSA.  [*See* R. 99 at 1, 3.]

[3] Laurel Grocery Company, LLC, was initially a party to this lawsuit but was dismissed without prejudice by agreed order.  [*See* R. 78; R. 79; R. 80.]

Two programs detailed in the RSSA are of particular importance to the current dispute.

█████████████████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

[R. 100-3 at ¶¶ 3, 5.] ████████████████████████████████████████████████

██████████████████████ [*Id.* at ¶ 7.] ██████████████████████████████████████

████████████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████. [*Id.* at ¶¶ 15-17.] █████████

██████████████████████████████████████████████████████████████████████████

██████████████████████████████████████

████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████

[*See* R. 99 at 5; R. 100-3 at ¶ 16.]

█████████████████████████████████████████████████████████████████

████████████████████████████████████████ [R. 100-3 at ¶ 40.] █████████████████

████████████████████████████████████████████████ [R. 99 at 5.] ████████████

███████████████████████████████████████████████████████████████

██████████████████████████████████████████████ [*Id.*] ████████████████████████

███████████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████████████

███████████ [*Id.*] ████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

████████████████████████████████████████ [*Id.* at 5-6; *see also* R. 100-3 at ¶ 16.]

Another RSSA arrangement, ████████████████████████████████ is

particularly relevant to the overall action. ████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████ [R. 99 at 7.] ███████████████

███████████████████████████████████████████████████████████

████████████████ [*Id.* at 7-8.] ██████████████████████████████

███████████████████████████████████████████████████████████

████████████████████████████ [*Id.*] █████████████████████████

████████████████████████████████:



[*Id.* (internal citations omitted).]

████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

[*Id.* at 8-9.]  According to the briefing:

[*Id.* (internal citations omitted).]



[*Id.* at 9.] ███████

███████ [*Id.* at 9.]  Nash-Finch then met with independent retailers, including Martin Cox on behalf of the Cox Defendants, to discuss █████████████████████. [*Id.* at 10.] ███████ was explained to retailers, including Martin Cox, by way of a PowerPoint presentation [*see* R. 100-11], but it is not detailed in the RSSA.  [*See* R. 100-3.]

The parties' briefs explain █████████████████ on the Cox Defendants in greater detail, but, in short, ████████████████████████████ According to the Cox Defendants, Martin Cox expressed concerns early on that █████████ would not work well for his stores.  [*See* R. 104 at 8.] ███████ ████████████████████████████████████████████ ████████████████████████ [R. 104-4 at 1.]  However, the Cox Defendants remained discouraged about ████████ over the course of the next three years, particularly because ████████████████████████████ ███████ [*See, e.g.*, R. 105-2 at 6.]  Martin Cox testified in his deposition that the Cox Defendants simply could not continue doing business pursuant to ████████████ ███████, and likened continuing under █████████ to "dying a slow death."  [*See* R. 104 at 8; R. 102-1 at 16.]

On February 27, 2015, Martin Cox contacted Plaintiffs by way of a termination letter, indicating the Cox Defendants would no longer be able to perform under the RSSA.  Mr. Cox offered to initiate a wire in the amount of $632,718.99 to cover the Cox Defendants' unpaid

amounts under the agreement.  [*See* R. 104-5.]  ████████████████████████████

██████████████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████  [*See*

*supra* at 3; R. 104-5 at 1.]  In response, Plaintiffs filed this lawsuit, "because Defendants failed to

█████████████ and failed to pay the liquidated damages" required under the RSSA.  [*See* R. 99

at 6.]

## II

When sitting in diversity, a federal court applies the substantive law of the state in which

it sits.  *Hayes v. Equitable Energy Resources Co.*, 266 F.3d 560, 566 (6th Cir. 2001) (citing

*Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)).  However, when considering

summary judgment arguments, a federal court applies the standards of Federal Rule of Civil

Procedure 56 rather than Kentucky's summary judgment standard as expressed in *Steelvest, Inc.

v. Scansteel Serv. Ctr. Inc.*, 807 S.W.2d 476 (Ky. 1991).  *See Gafford v. Gen. Elec. Co.*, 997 F.2d

150, 165 (6th Cir. 1993).  Under Rule 56, summary judgment is appropriate where the pleadings,

depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,

show that there is no genuine issue as to any material fact and that the moving party is entitled to

judgment as a matter of law.  *See* Fed. R. Civ. P. 56.  A fact's materiality is determined by the

substantive law, and a dispute is genuine if "the evidence is such that a reasonable jury could

return a verdict for the non-moving party."  *Anderson v. Liberty Lobby*, 477 U.S. 242, 248

(1986).

Summary judgment is inappropriate where there is a genuine conflict "in the evidence,

with affirmative support on both sides, and where the question is which witness to believe."

*Dawson v. Dorman*, 528 F. App'x 450, 452 (6th Cir. 2013).  "Credibility determinations, the

weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge. . . . The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Morales v. American Honda Motor Co., Inc.*, 71 F.3d 531, 535 (6th Cir. 1995) (quoting *Liberty Lobby*, 477 U.S. at 255).

## A

Plaintiffs seek summary judgment on their single breach of contract claim, as well as the Cox Defendants' eleven counterclaims. Plaintiffs contend the Cox Defendants breached the RSSA by terminating the agreement in 2015, as the RSSA should have remained in force until at least 2018. [R. 99 at 1-3.] The Cox Defendants do not disagree that Martin Cox, on their collective behalf, terminated the RSSA on February 27, 2015. [*See* R. 104 at 8-9; R. 104-5.] However, the Cox Defendants believe their termination did not operate as a breach of the RSSA because Plaintiffs' prior actions served as an initial breach of the parties' agreement. [R. 104 at 1.] The heart of the present dispute, then, is whether there are any outstanding issues of material fact as to the party responsible for the breach in the first instance. *See Dalton v. Mullins*, 293 S.W.2d 470, 476 (Ky. App. 1956) ("[H]e who first breaches a contract must bear the liability for its nonperformance. Thus no benefits should be obtained by the party who is guilty of the first breach."); *see also Hall v. Rowe*, 439 S.W.3d 183, 186-87 (Ky. App. 2014). To undertake this inquiry, the Court considers all evidence and draws all inferences in the light most favorable to the Cox Defendants. *See, e.g.*, *E.E.O.C. v. Ford Motor Co.*, 782 F.3d 753, 772-73 (6th Cir. 2015).

## 1

The Cox Defendants maintain genuine issues of material fact exist regarding whether Plaintiffs breached the RSSA prior to the February 2015 termination letter. First, the Cox

Defendants claim Plaintiffs breached the RSSA through untimely deliveries.  Article XI, Paragraph 27 of the RSSA indicates that "Super Food shall make timely deliveries of quality Product with acceptable fresh code dating, undamaged and in clean and healthy condition."  [R. 100-3 at ¶ 27.]  But the RSSA goes on to provide Super Food with the right to notice and an opportunity to cure in the event of an untimely delivery:

> Super Food shall provide phone notification to Corporations if any delivery is to be more than two (2) hours late.  Corporations can declare Super Food in breach of this Agreement if more than fifty percent (50%) of the deliveries in the aggregate for all Stores are four (4) hours or more late over a sixty (60)-day period.
>
> If for any thirty (30)-day period, more than 50% of the deliveries in the aggregate by Super Food for all Stores are four hours or more late, corporations shall provide written notice of such fact within five (5) days following expiration of the 30-day period, such notice given both (i) pursuant to Section 46 herein, plus (ii) fax notification on the same day.
>
> If following such notice, more than 50% of Super Food's deliveries in the aggregate for all Stores are four or more hours late for the full 60-day period, then corporations can terminate this Agreement following expiration of the 60 days upon both (i) giving a second written notice pursuant to Section 46 herein, which notice shall specify the date of termination, and (ii) complying with the terms of Section 38B herein.
>
> Under this Section, delivery is not late if . . . Corporations fail to fulfill its obligations under this Section.

[*Id.*]

Plaintiffs maintain they did not breach the RSSA due to any untimely deliveries, because the Cox Defendants wholly failed to follow the outlined notice and cure provisions.  In response, the Cox Defendants do not acknowledge those provisions of the contract at all but respond merely by stating "[a]mple testimony was provided by Martin Cox that these terms of the contract were not met and that matter should be submitted to the trier of fact." [4]  [R. 104 at 15.]

---

[4] The Court notes this conclusory assertion regarding Martin Cox's testimony is not supported by any citations to Cox's deposition or any other part of the record.  [*See* R. 104 at 15.]  The Court is under no duty to "search the entire record to establish that it is bereft of a genuine issue of material fact." *In re*

Upon review, the RSSA plainly requires the Cox Defendants to provide written notice of delayed or damaged deliveries.  [R. 100-3 at ¶ 27.]  The contract also explicitly states that deliveries will not be considered late if "Corporations fail to fulfill its obligations under this Section"—namely, obligations to provide written notice to Plaintiffs regarding the deficient deliveries.  [*Id.*]  Even if Plaintiffs acted wrongfully, the contract would require the non-breaching Cox Defendants to provide notice and an opportunity to cure any defects before terminating the contract.  *See Chrysler Realty Co. v. Design Forum Architects, Inc*., 341 F. App'x 93, 95-96 (6th Cir. 2009) (finding the party who failed to provide the requisite notice and opportunity to cure precluded from bringing a claim for breach of the same contract).  Plaintiffs have provided uncontradicted evidence by way of Martin Cox's deposition that the Cox Defendants never followed these Paragraph 27 notice and cure procedures.  [R. 102-1 at 35-36.]  Therefore, the Court determines no factual exists as to this issue and finds summary judgment in favor of Nash-Finch and Super Food on the issue

**2**

The Cox Defendants also maintain Plaintiffs breached the RSSA by virtue of ▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮.  [*See* R. 70 at 13.]  Article 11, Paragraph 32 of the RSSA states that Super Food will have ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ available to the Cox Defendants, "subject to applicable charges and the right of Super Food to make changes at any time as to their cost, nature and availability."  [R. 100-3 at ¶ 32.]  According to the Cox Defendants' Counterclaim II:



However, ▮▮▮▮▮▮ was a dismal

*Morris*, 260 F.3d 654, 655 (6th Cir. 2001).  Instead, "the nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact."  *Id.*  In any event, the language of the RSSA and relevant Sixth Circuit case law support Plaintiffs', rather than Defendants', position.

failure.  As such, ███████████████████ was not available to the corporations as it was closed down and, as a result of closing it down, the Plaintiffs breached numerical paragraph 32 of the RSSA by failing to provide a successful, reasonable and non-damaging ██████████████████ to the Cox entities and Cox individuals.

[R. 70 at 14.]

In their response to Plaintiffs' motion for summary judgment, the Cox Defendants go on to maintain the ██████████ was effectively mandatory, and if it was mandatory, it was "thus functionally part of the RSSA" and "its quality is relevant to whether or not there was a breach" by Nash-Finch and Super Food  [R. 104 at 12-13.]  The Cox Defendants, then, appear to be launching two distinct attacks related ██████████████: first, that Plaintiffs breached Paragraph 32 of the RSSA because ██████████████ was eventually "closed down" [R. 70 at 14], and second, that Plaintiffs breached Paragraph 32 of the RSSA because of ██████ ██████████████████.  [*See* R. 104 at 12 ("If the Defendants were bound by the RSSA and then were subsequently required to participate in ██████████ then ██████████ would have to be implemented in a reasonable manner.")]

As to the first attack, the record is devoid of actual evidence that ██████████████ was ever "closed down."  [*See* R. 70 at 14.]  The Cox Defendants maintain that there "remains a dispute as to whether or not ██████████████ is still in existence" [R. 104 at 8], but they provide no factual support for that assertion.  The record does reflect that ████████████████ ███████████████████████████████████████████████████ ██████████████████████████████████████████████████████ [R. 105-2 at 6.]  ███████████████████████████████████ ███████████████████  Instead, Plaintiffs have presented testimony demonstrating that ██

████████ remained in place even after the Cox Defendants' termination of the RSSA.[5]  [*See* R. 102-2 at 5-6; R. 102-8 at 3.]

As noted in Footnote 4, the Cox Defendants also appear to argue that, even if ████████ was not officially discontinued, ████████ was terminated in fact by virtue of ████████ poor performance.  The Cox Defendants accuse Plaintiffs of ████████████████████████ [R. 104 at 10.]  They contend their participation in ████████ was mandatory [*see id.* at 12-13] and thus claim ████████ "quality is relevant to whether or not there was a breach" by Nash-Finch and Super Food.  [*Id.* at 13.]  Although Plaintiffs go to some effort to indicate otherwise [*see* R. 99 at 13-14 (████████████████)], it is relatively clear from the record that ████████████████ for the Cox Defendants' stores.  The Court is not unsympathetic to the grocers' plight, but the Cox Defendants have pointed to no legal requirement on behalf of Plaintiffs to implement █ ████████ that *succeeded* or otherwise conformed to the Cox Defendants' specific needs and demands.

With regard to ████████████████, the RSSA states only that "Super Food will have the following services and programs available to the Corporations, subject to applicable charges and the right of Super Food to make changes at any time as to their cost, nature and availability."  [R. 100-3 at ¶ 32.]  A "████████████

---

[5] Defendants themselves seem to acknowledge this in their response to Plaintiffs' summary judgment motion.  Although their second breach of contract counterclaim is based primarily on Plaintiffs' alleged termination of ████████, the Cox Defendants later reference "the Plaintiffs' unilateral decision to implement ████████████████████████████████." [R. 104 at 10 (emphasis added).]  This statement pertains not to whether Plaintiffs breached the RSSA by ████████, but whether they breached the contract as a result of ████████ poor quality.  The Court turns to this argument next.

█████" is one of the listed services.  [*Id.*]  Under the RSSA, then, Plaintiffs were required to

provide ████████████████████████████ to the Cox Defendants, but

Plaintiffs were allowed to change the nature of the Program or the costs affiliated with it at any

time.  Nowhere does the RSSA mention an obligation on behalf of Plaintiffs to guarantee the

success of ████████ or to change or alter the program for the Cox Defendants' good.

Under Kentucky law, when a contract is unambiguous, a court looks "only as far as the

four corners of the document to determine the parties' intentions" and will not consider extrinsic

evidence.  *3D Enterprises Contracting Corp. v. Louisville & Jefferson Cnty. Metro. Sewer Dist.*,

174 S.W.3d 440, 448 (Ky. 2005); *Frear v. P.T.A. Indus., Inc.*, 103 S.W.3d 99, 106 (Ky. 2003).

"The fact that one party may have intended different results, however, is insufficient to construe

a contract at variance with its plain and unambiguous terms."  *3D Enterprises,* 174 S.W.3d at

448 (citing *Cantrell Supply, Inc. v. Liberty Mutual Ins. Co.*, 94 S.W.3d 381, 384 (Ky. App.

2002)).  Despite the Cox Defendants' contentions to the contrary, the Court finds Paragraph 32

of the RSSA to be unambiguous.[6]  *Cantrell Supply, Inc.*, 94 S.W.3d at 384 (explaining that the

potential ambiguity of contractual language is a question of law for the Court).  In light of the

plain language of the RSSA, the Court simply cannot find Nash-Finch and Super Food in breach

of the contract because of how they implemented, and later made any changes to, ██████

████.

---

[6] In their response to Nash-Finch and Super Food's summary judgment motion, the Cox Defendants argue "the right of the Plaintiffs to ██████████████████████ under the RSSA" and "the delivery obligations of the Plaintiffs" under the agreement are ambiguous, thus requiring resolution by a fact-finder instead of the Court.  [*See* R. 104 at 16-19]; *Cantrell Supply, Inc.*, 94 S.W.3d at 385 ("[O]nce a court determines that a contract is ambiguous, areas of dispute concerning the extrinsic evidence are factual issues and construction of the contract become[s] subject to resolution by the fact-finder.").  As Plaintiffs point out, the Cox Defendants "must present evidence to support a reasonable interpretation that differs from the moving party."  *GenCorp, Inc. v. Am. Int'l Underwriters, et al.*, 178 F.3d 804, 819 (6th Cir. 1999).  They have simply failed to do so.  "[T]he mere incantation of 'ambiguity' by the nonmovant does not satisfy its burden under Rule 56."  *Id.*

12

The Cox Defendants go to some lengths to demonstrate that a fact issue remains as to ██████████████████████████████████████████████ [R. 104 at 7.] ██████████████████████████████████████████

██████████████████████████████████████████████ ██████████████████████████████████████████ [R. 100-3 at ¶ 13.] ███████████████████████████████████████

████████████████ [R. 107 at 6.] ███████████████████████████ ████████████████████████████████████████████ █████████████████████ [R. 104 at 7; R. 105-4 at 2.]

This disagreement notwithstanding, the Cox Defendants have not claimed that Plaintiffs breached the RSSA by ████████████████████████████████████████ ███████████████████████████████. Instead, they assert ███████████████ was a "dismal failure" and bring their breach of contract claim based on Plaintiffs' inability to "provide a successful, reasonable and non-damaging ██████████████████." [R. 70 at 14.] In light of the Cox Defendants' actual counterclaim, whether or not ████████████████ ████████████████████████████████ is immaterial for purposes of this summary judgment inquiry. "As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. To determine whether Plaintiffs breached the RSSA by wrongfully terminating or providing a poor quality ████ ███████████████████, neither the Court nor a jury need resolve the fee question.

To the extent the Cox Defendants argue this interpretation of the contract is

unconscionable [*see* R. 104 at 19-20], the Court disagrees.  An unconscionable contract is one that "no man in his senses, not under delusion, would make, on the one hand, and which no fair and honest man would accept, on the other."  *Conseco Finance Servicing Corp. v. Wilder*, 47 S.W.3d 335, 342 (Ky. App. 2001) (internal quotation marks and citation omitted).  Courts address such claims, which typically require an analysis of both procedural and substantive unconscionability, on a case-by-case basis.  *Id*.  Here, the Cox Defendants provide no legal authority or factual predicate to support their contention of unconscionability.  The language of the RSSA is clear, and the Cox Defendants are sophisticated entities.  *See, e.g*., *Valued Servs. of Ky., LLC v. Watkins*, 309 S.W.3d 256, 263 (Ky. App. 2009).  The Cox Defendants remain bound under the contract.  In the end, the Court finds no genuine issues of material fact as to which party breached the RSSA in the first instance.  Accordingly, summary judgment in favor of Plaintiffs is appropriate on Plaintiffs' breach of contract claim and the Cox Defendants' breach of contract counterclaims.

**B**

Having considered the primary breach of contract claim, the Court turns to the Cox Defendants' nine remaining counterclaims.  Some of these counterclaims may be disposed of with relative ease.  First, the Court considers the Cox Defendants' gross negligence, negligence, and breach of oral contract claims waived.  While Plaintiffs specifically discussed those three claims in some detail in their motion for summary judgment [*see* R. 99 at 37-38], the Cox Defendants never responded to Plaintiffs' arguments or even acknowledged the existence of the counterclaims at all in their response.  [*See* R. 104.]  Once a party moves for summary judgment on a claim, it is inappropriate for the non-movant to simply rely on the pleadings.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *see also Chicago Title Ins. Corp. v. Magnuson*, 487 F.3d

985, 995 (6th Cir. 2007).  As Plaintiffs have explained, Martin Cox testified that the only contract at issue in this case is the RSSA.  [*See* R. 99 at 37.]  Thus, the Court is aware of no evidence in the record of a separate oral contract that might give rise to the Cox Defendants' breach of oral contract claim.  Further, the Cox Defendants fail to explain how Plaintiffs' actions trigger a claim for tort, as opposed to contractual, relief.  *See Mims v. Western-Southern Agency*, 226 S.W.3d 833, 836 (Ky. App. 2007) (explaining that "the failure to perform a contractual obligation typically does not give rise to a cause of action in tort" unless a plaintiff "can establish the existence of an independent legal duty").  Accordingly, Plaintiffs are entitled to summary judgment on Counterclaim VII, VIII, and IX.

Other counterclaims should be dismissed because of their close relationship to the ultimate breach of contract question.  For example, the Cox Defendants' counterclaims for fraud in the inducement, constructive fraud, and negligent misrepresentation all trigger the so-called economic loss doctrine, which bars recovery for certain claims that are "intertwined with a breach of contract claim."  *See Westlake Vinyls, Inc. v. Goodrich Corp.*, 518 F. Supp. 2d 955, 968 (W.D. Ky. 2007).

The economic loss doctrine bars tort claims arising from the purchase of goods, as well as "any transaction that may be characterized a 'business purchase.'"  *Highland Stud Int'l v. Baffert*, No. 00-261-JMH, 2002 WL 34403141, at *4 n. 4 (E.D. Ky. May 16, 2002) (quoting *Mt. Lebanon Personal Care Home, Inc. v. Hoover Universal, Inc.*, 276 F.3d 845, 849 (6th Cir. 2002)).  Similarly, the doctrine bars tort claims seeking recovery for consequential economic loss.  *Id.*; *see also Gooch v. E.I. Du Pont De Nemours & Co.*, 40 F. Supp. 2d 863, 875 (W.D. Ky. 1999).  While the Kentucky Supreme Court "has yet to fully define the contours of Kentucky's economic loss rule," various federal courts have applied the economic loss doctrine to preclude

both fraud and negligent misrepresentation claims. *Ashland Hosp. Corp. v. Provation Medical, Inc.*, No. 14-444-DLB-EBA, 2014 WL 5486217, at *4 (E.D. Ky. Oct. 29, 2014) (noting courts apply the doctrine "with equal force to fraud and negligent misrepresentation claims); *see also Westlake Vinyls*, 518 F. Supp. at 968.

Though the Cox Defendants' argument regarding the applicability of the doctrine is somewhat unclear, they appear to contend that their fraud and misrepresentation claims arise separately from the RSSA and, thus, are not "intertwined" with the breach of contract issue. [*See* R. 104 at 22-23.] This is misguided. The basis of the fraud and misrepresentation counterclaims are Plaintiffs' actions and representations in the implementation and subsequent carrying out of ███████████. [*See* R. 70 at 14-16.] As previously discussed, the Cox Defendants themselves argue ███████████ is covered by Article 11, Paragraph 32 of the RSSA. [R. 70 at 13-14; *see also* R. 100-3 at ¶ 32.] Defendants' breach of contract claim regarding ███████ ███████████ and these fraud and misrepresentation claims stemming from Plaintiffs' "representations in presenting ███████████" [*see* R. 70 at 16-17] are sufficiently related so as to trigger the economic loss doctrine.

Moreover, the Cox Defendants' unjust enrichment counterclaim fails in light of the breach of contract question. The Cox Defendants maintain Plaintiffs were unjustly enriched when they "terminated ███████████ but failed to ███████████ ███████. [R. 70 at 14.] As explained above, the record indicates Plaintiffs never terminated ███ ███████. Further, the RSSA provides for "the right of Super Food to make changes at any time" to the "███████████" of ███████████. [R. 100-3 at 10.] "Under Kentucky law, the doctrine of unjust enrichment has no application in a situation where there is an explicit contract which has been performed." *Shane v. Bunzl Distribution USA, Inc.*,

200 F. App'x 397, 404 (6th Cir. 2006) (quoting *Codell Constr. Co. v. Ky.*, 566 S.W.2d 161, 165

(Ky. Ct. App. 1977); *see also Hesco Parts, LLC v. Ford Motor Co.*, No. 3:02-cv-736-S, 2009

WL 854362, at *6 (W.D. Ky. Mar. 30, 2009), *aff'd Hesco Parts Corp., LLC v. Ford Motor Co.*,

377 F. App'x 445 (6th Cir. 2010).  There is no indication that Plaintiffs acted outside of Article

XI, Paragraph 32 by creating ██████████████████████████████████

████████████████████████████████████████████. Thus, summary

judgment in favor of Nash-Finch and Super Food is also appropriate on this counterclaim.

The Cox Defendants' counterclaim for promissory estoppel suffers from a similar fate.

Predicting the holding of the Kentucky Supreme Court, the Sixth Circuit has determined that a

promissory estoppel claim under Kentucky law "cannot be the basis for a claim if it represents

the same performance contemplated under a written contract." *Shane*, 200 F. App'x at 403-04

(quoting *Tractor & Farm Supply, Inc. v. Ford New Holland, Inc.*, 898 F. Supp. 1198, 1205

(W.D. Ky. 1995)).  Because promissory estoppel is not "designed to give a party to a negotiated

commercial bargain a second bite at the apple in the event it fails to prove breach of contract,"

the Cox Defendants may not recover on their promissory estoppel claim for Plaintiffs'

implementation of ██████████████. *See id.* (quoting *General Aviation, Inc. v. Cessna Aircraft

Co.*, 915 F.2d 1038, 1042 (6th Cir. 1990).

As for the Cox Defendants' equitable estoppel counterclaim, the claim fails to survive the

doctrine's multi-element test.  In Kentucky, equitable estoppel may be invoked by an innocent

party who has been fraudulently induced to change her position in reliance on an otherwise

unenforceable agreement. *See Rivermont Inn, Inc. v. Bass Hotels & Resorts, Inc.*, 113 S.W.3d

636, 643 (Ky. App. 2003).  "The doctrine's elements are: (1) conduct which amounts to a false

representation or concealment of material facts, or conduct calculated to convey the impression

that the facts are otherwise than those which the party subsequently attempts to assert; (2) the intention or expectation that such conduct will influence the other party; and (3) actual or constructive knowledge of the real facts.  The party claiming estoppel must therefore show that: (1) it lacked knowledge—or access to knowledge—concerning the facts in question; (2) it relied in good faith upon the conduct or statements of the other party; and (3) acting in reliance, it changed its position or status to its injury, detriment, or prejudice."  *Adler v. Elk Glenn, LLC*, No. 12-85-ART, 2013 WL 6632057, at *10 (E.D. Ky. Dec. 17, 2013) (citing *Weiand v. Bd. of Trustees of Ky. Retirement Sys.*, 25 S.W.3d 88, 91 (Ky. 2000)).

Because the RSSA allowed Plaintiffs to "make changes at any time" to the "████████ ████████" of ████████, the Court cannot find there was any false representation or material concealment by Plaintiffs as a result of ████████. [*See* R. 100-3 at ¶ 32.]  The Cox Defendants cannot claim to have lacked knowledge or access to knowledge regarding Plaintiffs' ability to ████████. *Adler*, 2013 WL 6632057, at *10.  Because the Cox Defendants' equitable estoppel claim fails to survive the first prong of the test in light of the plain language of the RSSA, summary judgment in favor of Nash-Finch and Super Food is appropriate on this counterclaim.  Therefore, as explained above regarding each claim and counterclaim, summary judgment in favor of Nash-Finch and Super Food is wholly warranted in this case.

## C

In light of the above analysis, the Court considers the amount of monies owed by the Cox Defendants to Nash-Finch and Super Food.  Plaintiffs ask the Court to award $790,307.00 in liquidated damages; an additional $17,000 owed under ████████; and prejudgment interest pursuant to K.R.S. § 360.040.

The RSSA provides for liquidated damages in the event of an early termination.  [R. 100-3 at ¶ 40, 41.]  Specifically, the agreement states:



[R. 100-3 at ¶ 41.]  The Cox Defendants maintain that, at the time of the RSSA's termination, the amount of damages owed under this clause "could not be determined with certainty."  [R. 104 at 1.]  Defendants point to the fact that the amount of money requested by Plaintiffs has changed—actually, decreased—over the course of the litigation as support for their contention that the alleged damages "were not truly liquidated and thus do not merit prejudgment interest."  [*Id.* at 25.]

Kentucky courts have made clear that while "at one time courts looked with disfavor upon contracts providing for liquidated damages, that time has long passed."  *Coca-Cola Bottling Works (Thomas) Inc. v. Hazard Coca-Cola Bottling Works, Inc*., 450 S.W.2d 515, 518 (Ky. App. 1970) (citing *United States v. Bethlehem Steel Co*., 205 U.S. 105 (1907)).  Indeed, Kentucky courts enforce liquidated damages clauses "unless the proof clearly shows that according to the circumstances existing at the time of the execution, the amount was grossly

disproportionate to the damage which might flow from a breach." *Id.*; *see also Patel v. Tuttle Properties, LLC*, 392 S.W.3d 384 (Ky. 2013).

There is no indication that the liquidated damages clause in the RSSA is invalid or unenforceable, despite the fact that Plaintiffs initially asserted an amount due of $822,162.79. [*See* R. 104 at 10.]  The record suggests Plaintiffs initially answered discovery requests about their damages before receiving Defendants' retail sales totals, thus rendering Plaintiffs' initial calculations under Paragraph 41 of the RSSA inaccurate.  [*See* R. 107 at 3.]  Once Plaintiffs received the Cox Defendants' retail sales totals, "mere computation was all that was needed to establish with reasonable certainty the damages owed from an unpaid fixed contract price." *Service Financial Co. v. Ware*, 473 S.W.3d 98, 104 (Ky. App. 2015) (quoting *3D Enterprises*, 174 S.W.3d at 450) (internal quotation marks omitted).  And notably, both parties now agree the appropriate calculation under the contract is $790,307.00.  [*See* R. 100-8 (detailing damage calculations); R. 104 at 1-2 ("The parties now agree that using the formula contained within the clause, the liquidated damages owed, if any, amount to $790,307.").]

Satisfied that the damages agreed to by the parties in the RSSA are, in fact, liquidated damages, the Court also awards Nash-Finch and Super Food prejudgment interest.  *See Nucor*, 812 S.W.2d 136 (indicating an award of interest is a matter entrusted to the trial court's discretion); *Diggs v. Pepsi-Cola Metro. Bottling Co., Inc.*, 861 F.2d 914, 924 (6th Cir. 1988) (holding that state law governs prejudgment interest in diversity actions).  "When the damages are 'liquidated,' prejudgment interest follows as a matter of course." *Nucor Corp. v. General Electric Co.*, 912 S.W.2d 136, 141 (Ky. 1991).  On a claim for liquidated damages, "a successful plaintiff is entitled to interest at the legal rate of eight percent (8%) per annum." *Poundstone v. Patriot Coal Co.*, 485 F.3d 891, 903 (6th Cir. 2007) (quoting *Pursley v. Pursley*, 144 S.W.3d

20

820, 828 (Ky. 2004)).  *See also* K.R.S. § 360.010(1).[7]  Further, "pre-judgment interest has

traditionally been simple interest."  *Reliable Mechanical, Inc. v. Naylor Indus. Servs., Inc*., 125

S.W.3d 856, 857-58 (Ky. App. 2003).  Finding no reason to depart from these traditional

principles and the state of Kentucky's legal interest rate, the Court awards Nash-Finch and Super

Food simple prejudgment interest at the rate of eight percent (8%) per annum on the $790,307.00

in liquidated damages.

Finally, the record indicates Nash-Finch and Super Food are, indeed, due an additional

$17,000 under ████████████████.  Plaintiffs have submitted evidence that

████████████████████████████████████████████████████

██████ [*see* R. 99 at 5-6], and the Cox Defendants' counsel has conceded that the additional

$17,000 "may in fact be owed."  [R. 104 at 2.]  Although the Cox Defendants maintain the

amount of money owed ████████████ was "unknown" at the time of the RSSA's

termination [*see* R. 104 at 26], the record indicates the Cox Defendants themselves were in a

position to calculate ████████████████ at the time of the breach.  [*See* R. 107 at 3

(citing R. 100-8; R. 102-4).]  Therefore, the Court finds Nash-Finch and Super Food are due

$17,000 ████████████████, as well as simple prejudgment interest at the rate

of eight percent (8%) per annum on that $17,000 payment.

### III

For the foregoing reasons, the Court finds Plaintiffs Nash-Finch and Super Food entitled

to summary judgment on their breach of contract claim, as well as the Cox Defendants' eleven

---

[7] While Plaintiffs ask the Court to award prejudgment interest pursuant to K.R.S. § 360.040, that statute
applies to awards of *post*-judgment interest.  *See, e.g*., *Fields v. Fields*, 58 S.W.3d 464, 467 (Ky. 2001)
("While KRS 360.040 provides for interest at the rate of 12% per annum on a judgment, that provision
does not apply to prejudgment interest.  Prejudgment interest is limited to the legal rate, found in KRS
360.010, of 8%.).

counterclaims.  The Court being otherwise sufficiently advised, it is hereby **ORDERED** as follows:

1.   Plaintiffs' Motion for Summary Judgment [R. 101] is **GRANTED**;

2.   The parties' pending motions for leave to seal [R. 98; R. 103; R. 106] are **GRANTED** for the reasons set forth in Footnote 1; and

3.   Judgment in favor of Plaintiffs shall be entered contemporaneously herewith.

This the 10th day of November, 2016.

Gregory F. Van Tatenhove
United States District Judge